ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7199
    FAX: (415) 436-7234
    Jared.Buszin@usdoj.gov

Attorneys for United States of America

FILED

May 17 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>YOHAN MURILLO-MEDINA,<br><br>    Defendant. | CASE NO. 23-CR-105-JSC<br><br>**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |

# INTRODUCTION

The defendant, Yohan Murillo-Medina, is a foreign national and admitted drug dealer with few ties to the community who has been arrested five times for narcotics trafficking offenses committed in San Francisco and Oakland since October 2020. Most recently, he was arrested in January of this year after he fled from law enforcement in the Tenderloin and discarded a significant amount of narcotics, including approximately ***1.75 kilograms (gross) of fentanyl*** as well as other drugs that were stored in his backpack and other belongings.



After his arrest, the defendant was mirandized and made numerous incriminating statements on video, including admissions that he had been selling a variety of drugs prior to his arrest and that he sold drugs for work because that was how the people he knew made a living.

This most recent incident led the San Francisco District Attorney's office to charge the defendant

UNITED STATES' DETENTION MEMORANDUM   2
23-CR-105-JSC

with two felony narcotics offenses.  When it came time for the arraignment on those charges, the defendant failed to show up for court and a bench warrant had to be issued.  Now, a federal grand jury has returned an indictment charging the defendant with two counts of drug trafficking.  Based on the significant quantity of drugs recovered by law enforcement, the defendant likely faces a potential federal sentence of more than ten years' imprisonment under the Sentencing Guidelines.[1]

In this case, the defendant must overcome a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.  The record demonstrates that he cannot rebut that presumption.  Accordingly, the government respectfully requests that the Court order the defendant be detained pending trial.

**I.     FACTUAL BACKGROUND**

**A.     The Defendant Fled and Discarded About 1.75 Kilograms of Fentanyl When Officers Sought to Detain Another Suspected Drug Trafficker**

On the evening of January 29, 2023, San Francisco Police Department officers were observing a suspected drug trafficker operating just west of the northwest corner of Golden Gate Avenue and Hyde Street in the Tenderloin of San Francisco.  The defendant was located at the northwest corner of Golden Gate and Hyde at the time and, as officers approached to detain the target they had been observing, the defendant took off running.  Several officers gave chase and pursued the defendant on foot for approximately two and a half blocks.  While in pursuit, officers seized several items that the defendant discarded as he ran, including a backpack, a jacket, and a plastic bag containing suspected narcotics.  The defendant eventually stopped running when he realized that other officers were pursuing him in vehicles.

The defendant was brought to Tenderloin Station, where he waived his Miranda rights and made several incriminating admissions.  The defendant told officers that he had been at Golden Gate and Hyde "selling…drugs," such as "crystal, cocaine, heroin, and everything that's going."  He also explained to

---

[1] While the current indictment does not charge any counts that carry a mandatory minimum prison sentence, the large amount of fentanyl officers seized exceeds the weight threshold for charging A-weight, which carries a 10-year mandatory minimum sentence.

UNITED STATES' DETENTION MEMORANDUM     3
23-CR-105-JSC

officers that he sold drugs because when he arrived in San Francisco that is what the people he was with were doing for work. The defendant said he lived in Oakland and would come to San Francisco to sell narcotics.

Officers at Tenderloin Station reviewed the contents of the defendant's possessions and ultimately identified, among other things, approximately 1.75 kilograms (gross) of fentanyl and 20.7 grams (gross) of methamphetamine, with initial field testing of those suspected narcotics returning presumptive positive results. A portion of the seized drugs was subsequently tested by the Alameda County Sheriff's Office Crime Lab. Those test results were consistent with the field test results and confirmed the presence of fentanyl and methamphetamine in the substances that the defendant possessed.

### B. The Defendant Has Numerous Prior Arrests for Narcotics Trafficking

The January 2023 incident was only the most recent in a series of incidents where the defendant has been arrested for narcotics trafficking. In October 2020, the defendant was arrested at Golden Gate and Hyde after officers observed him conduct a hand-to-hand drug sale. In a search of the defendant incident to that arrest, officers seized approximately 20 grams of suspected methamphetamine, smaller amounts of suspected cocaine base and heroin, and several hundred dollars of suspected drug trafficking proceeds. On November 4, 2020, a stay-away order was issued requiring the defendant to stay at least 150 years away from the site of his arrest.

Notwithstanding that stay-away order, the defendant was arrested again less than two months later after he solicited an undercover officer to buy narcotics from him on Hyde Street approximately one to two blocks north of Golden Gate Avenue. A search of the defendant incident to that arrest led to the seizure of approximately 21 grams of suspected methamphetamine, approximately 37 grams of suspected cocaine base, and approximately 14 grams of suspected heroin. The defendant eventually pleaded guilty to a PC 32 charge (accessory) in January 2021 and was sentenced to one year of probation in connection with both these incidents. The sentencing court also issued a stay-away order

covering a more extensive portion of the Tenderloin.[2]

The defendant's conviction and placement on probation did not deter him from continuing to traffic narcotics. He was arrested again in March 2021 just north of the Tenderloin after a probation search of a car in which he was the sole occupant led to the seizure of methamphetamine, cocaine base, and heroin. And a month later, the defendant was arrested yet again (along with three other individuals) while on probation when law enforcement seized a variety of narcotics—including fentanyl, methamphetamine, heroin, and cocaine base—while executing a search warrant at an Oakland residence where the defendant was located.

### C. The Defendant Is a Foreign National with Few Ties to the District

The defendant is a 21-year-old Honduran national and his criminal history suggests he entered the country illegally in or around February 2020. While the extent of his ties to this district are currently unknown, his arrest record suggests that he has been in the Bay Area for only a few years. He has no legitimate employment and has been working as a drug dealer during that time. Indeed, by his own admission, he sold drugs for a living because that is what the people he knew here were doing to make money.

## II. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.* "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an

---

[2] The order applied to the area bounded by Polk, Powell, Market, and Geary Streets.

UNITED STATES' DETENTION MEMORANDUM    5
23-CR-105-JSC

individualized determination, are impermissible. *Id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id.*

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more (as here), courts apply a rebuttable presumption against the defendant that no condition or combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production then shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See U.S. v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the court concludes that the defendant has rebutted the statutory presumption of detention, the court must consider four factors in determining whether the pretrial detention standard is met. Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## III. ARGUMENT

### A. The Defendant Is Subject to a Presumption in Favor of Detention

The defendant is charged with two violations of 21 U.S.C. § 841(a)(1), (b)(1)(C) and each of those counts carries a statutory maximum penalty of more than ten years' imprisonment. As such, the defendant is subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). In order to overcome this presumption, the defendant bears the burden to prove that he is not a flight risk *and* that his release will not endanger the community. He cannot do so here.

### B. The Defendant Cannot Rebut the Presumption That He Poses a Flight Risk

A preponderance of the evidence establishes that the defendant presents a flight risk absent pretrial detention. The nature and circumstances of the charged offenses and the weight of the evidence suggest that the defendant faces near certain conviction and a potentially lengthy federal sentence. As set forth above, the evidence against the defendant is overwhelming—he was observed discarding narcotics after his unprompted flight from police and made mirandized statements admitting to his conduct. A preliminary analysis of the seized drug quantity suggests that the defendant's base offense level under the Guidelines is 32, which corresponds to an advisory sentencing range of 121-151 months' imprisonment, assuming the defendant falls into Criminal History Category I. A possible sentence of that length presents the defendant with a strong incentive to flee.

The flight risk in this case is further reinforced by the defendant's failure to appear at his scheduled arraignment on state charges related to the January 29 incident, which led to the issuance of a bench warrant. The defendant's history of violating his conditions of parole—as reflected by his repeated arrests in 2021 within a few months of sustaining a conviction—further suggests that he is unlikely to abide by any conditions of release imposed by the Court, whether related to his appearance or otherwise.

The defendant's other history, characteristics, and community ties (or lack thereof) fail to mitigate the risk of flight, particularly in a presumption case such as this one. In short, the defendant is a 21-year-old foreign national who appears to have only been in the United States for about three years. It is likely that the closest relationships he has developed over the course of his life are with individuals who live elsewhere, likely back in his home of Honduras. Given his admission to working as a drug

dealer, the defendant almost certainly lacks lawfully acquired assets for a bond and appears to have no legitimate employment tying him to the district.  Furthermore, the defendant's admission that he became a drug dealer because that was how his associates in the Bay Area earned a living raises serious concerns about the adequacy of any surety or custodian that the defendant might propose.

### C. The Defendant Cannot Rebut the Presumption That He Poses a Danger to the Community

Pretrial detention is also appropriate insofar as clear and convincing evidence demonstrates that the defendant poses a danger to the community.  As set forth above, the record establishes that the defendant has spent the past several years working as a drug dealer and was most recently arrested after discarding a significant cache of narcotics possessed for sale in the Tenderloin, including approximately 1.75 kilograms of fentanyl—a drug which is currently the primary driver of a growing number of accidental overdose deaths in San Francisco.  Indeed, as recently reported by the *San Francisco Chronicle*, two hundred people have died in the first three months of 2023 from accidental drug overdoses, with the overwhelming majority of those deaths involving fentanyl.[3]  That figure exceeds the number of accidental overdose deaths occurring during the first three months in each of the past three years.

The defendant's "continuing involvement with the distribution of drugs" militates in favor of detention.  *United States v. Wolf*, 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *United States v. Fulgham*, 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The Senate Report states: The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.  Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community." (quotation marks and citation omitted)).  This is particularly true in a drug trafficking case like this one, which involves a significant amount of fentanyl.  *United States v. Texeira-Spencer*, No. CR 21-145 (JDB), 2021 WL 1535309, at *4 (D.D.C. Apr. 19, 2021) ("Fentanyl distribution poses a grave danger to the community."); *cf. United States v. Germosen*, No. CR 20-0015-MSM-LDA, 2023 WL 1991782, at *3

---

[3] Christian Leonard, *'Enormous Rise' in San Francisco Overdose Deaths in 2023*, S.F. Chron., Apr. 19, 2023 (https://www.sfchronicle.com/sf/article/drug-overdose-deaths-2023-17904060.php).

UNITED STATES' DETENTION MEMORANDUM   8
23-CR-105-JSC

(D.R.I. Feb. 14, 2023) ("The distribution of fentanyl presents a special danger to the community and has contributed to the overdose crisis experienced in the district as well as around the country."); *United States v. Alvira*, No. 8:18-CR-441-WFJ-CPT, 2022 WL 2343224, at *2 (M.D. Fla. June 29, 2022) ("The quantity of drugs, including fentanyl, that [Defendant] intended to distribute indicates that he is a danger to the community."); *United States v. Hudson*, No. 20-CR-27 (SRN/DTS), 2021 WL 4352359, at *4 (D. Minn. Sept. 24, 2021) ("[D]anger to the community is evident from [Defendant's] alleged involvement in trafficking fentanyl, a highly dangerous drug….").

Finally, the defendant's history demonstrates that he has no qualms about continuing to engage in dangerous criminal conduct even when he is the subject of a pending prosecution, as demonstrated by his December 2020 narcotics trafficking arrest, or when he is otherwise under court supervision, as demonstrated by his two 2021 drug trafficking arrests while on probation.

## IV.     CONCLUSION

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: May 17, 2023                                     Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


 */s/ Jared Buszin*_____
Jared S. Buszin
Assistant United States Attorney